ROLLO *v.* CITY ELECTRIC RAILWAY CO.

1. STREET RAILROADS — CHILDREN NEAR TRACKS — PERSONAL IN-
   JURIES—LIABILITY OF RAILROAD COMPANY.

In an action against a street-railroad company for injuries to a child of tender years caused by the motorman's failure to stop his car when the child attempted to cross the track ahead of his car, instructions to the effect that there was no duty or obligation on the part of the company to slack or stop its cars every time a young child, unattended by older persons, appeared on the street at some distance ahead of or near the car, and that if, from a place that was apparently safe, the child suddenly rushed upon the track when it was too late for the motorman to stop his car, he having already taken all the precautions dictated by prudence, the accident was unavoidable and there could be no recovery by plaintiff, are sufficiently favorable to defendant.[1]

[1] As to duty to avoid injuring children on street-railway track, see note to *Wallace* v. *City & Suburban R. Co.* (Or.), 25 L. R. A. 663.

2. APPEAL AND ERROR — REVERSAL — UNIMPORTANT ERROR — RE-
SPONSIBILITY OF PARTY COMPLAINING.

> Judgment in an action by an infant for personal injuries will
> not be reversed for failure of the court to limit the damages
> recoverable to the probable diminution of plaintiff's earnings
> after maturity, where the question was not raised until the
> briefs were filed in this court and the plaintiff's father im-
> mediately filed a release of his claim for such services against
> the defendant.

Error to St. Clair; Tappan, J. Submitted January 24, 1908. (Docket No. 130.) Decided March 31, 1908.

Case by Harry Rollo, by next friend, against the City Electric Railway Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Phillips & Jenks* (*James G. Tucker*, of counsel), for appellant.

*Frank T. Wolcott* and *John B. McIlwain*, for appellee.

Plaintiff, a child about two and a half years old, while crossing defendant's tracks on the outskirts of the city of Port Huron, about 4 o'clock in the afternoon, was struck by one of defendant's cars and seriously injured. For this injury he recovered a verdict and judgment of $10,000. The attorneys for each party made a statement of the claim which was read by the court to the jury. The issue involved will, perhaps, appear more clearly and briefly from those claims than from either statement of facts made in the briefs of counsel, or by one that might be made by the court. They are as follows:

It is the claim of the plaintiff that the street was unobstructed at the time; that the presence of the child and his companion in the street in close proximity to the tracks could have been seen for a distance of upwards of 700 feet; that the car was running at a speed of 12 miles an

hour; and as the plaintiff and companions were crossing said street in front of said approaching car, the motorman in charge of said car made no attempt to slacken down the speed of the car to get it under control until within a short distance of the plaintiff and too late to avoid striking him; and that the act of the motorman in charge of the car in so running the car as to strike the plaintiff was reckless and negligent; and this action is brought to recover damages for the injuries sustained. These are the claims set forth by the plaintiff's statement.

The claim of the defendant in this case is that the plaintiff, a child of two and one-half years of age, in company with another child of tender years, was on the day in question and about three o'clock in the afternoon, playing on Military street at a point opposite the residence of W. L. Wilson, and near the east curb line of the street. The two tracks of the defendant company occupy a space of 14 feet 6 inches in the center of the paved portion of the street, the pavement being 40 feet in width; and the two children were at some point between the east rail of the east track and the east curb line of the street; that the position which they occupied was not one of danger in so far as cars operated on the west track are concerned; that the defendant's car, and the one which afterwards struck the plaintiff, was at the time the children were so located, proceeding south on the west track at a lawful rate of speed; and that the motorman saw the children and had them in sight from the time when the car had arrived within a distance of about 600 feet of where the children were playing; that no claim is made that the position of the children at this time was one of danger, and that the claim of the defendant to this extent is undisputed. The defendant also claims that when the car had arrived within a distance of 400 feet of the point where the children were, the motorman began to sound his gong and continued to sound it until the time the plaintiff left the position where he had been and started to cross the tracks to the west; that when the car had reached a point about 200 feet from

the point where the accident occurred, the current was shut off and was not turned on again until after the accident; that when the car reached a point about the middle or near the south line on Tenth street intersection or about 50 feet or thereabouts north of the line where the child was struck, the plaintiff suddenly left the position in which he was playing and ran quickly to the west in the direction of the west track and in front of the moving car; that the motorman was standing in the front of the car with his hand on the brake; and that immediately on the plaintiff starting, he, the motorman, applied the brake and made every possible effort to stop the car and prevent striking the child, but was unable to do so by reason of the fact that the quick movements of the plaintiff and his sudden crossing of the track did not leave sufficient time for any person to have stopped the car in time to avoid striking the child; that by reason thereof, every step that was possible to take was taken and that no duty was avoided and no negligence committed by the motorman; and that no matter how serious the consequences may be to the child, there is no liability on the part of the company.

Each party gave evidence in support of his claim.

In reply to a special question the jury found that the plaintiff did not start across the street in front of the approaching car after the car had reached the north line of Tenth street. That line was 50 feet from the place of the accident and when the car was at that point it is the claim of the defendant that the child started across the street in front of the approaching car.

It seems to be admitted that the motorman saw the child at a distance of 600 feet; that he shut off his current when 200 feet, and that he did not attempt to stop his car until within 50 feet. The special finding of the jury seems to have established the fact that the child started across when he was some 125 feet from the car.

Grant, C. J. ( *after stating the facts* ). 1. The two principal errors relied upon for reversal are the refusal of the court to give the following requests to charge:

" It was not the duty of the motorman to make any attempt to stop the car until the time when the plaintiff's movements indicated an intention on his part to move in the direction of the tracks. And if you find that he made every reasonable effort to stop his car as soon as the child started moving toward the tracks, he performed his whole duty, and the defendant is entitled to a verdict.

" While it was the duty of the motorman to exercise reasonable care under the circumstances shown by the proofs in this case, he was not required to anticipate that the children would attempt to cross in front of the moving car, nor was he required to check his car in anticipation of such a movement."

An examination of the oral charge of the court shows that the substance of these requests was given. After stating that both the plaintiff and the defendant had a lawful right to be upon the street, the court instructed the jury:

" You are instructed that the degree of care required by a motorman in running his car, is such care as a careful and prudent man would use under the circumstances of each case that requires care to avoid an accident. The question invariably is: What should we expect a careful and prudent man to do under the circumstances of the case before us? And in applying this rule in this case, you are to consider the age and location of the plaintiff at the time of the accident and immediately prior thereto.

"In the case of an adult occupying the position of the plaintiff he could not recover in this action from the fact that his age and his discretion would operate to warn him of danger. This rule, however, does not apply in the case of this child who was only two years and a half of age at the time of the accident. Such a child has not reached the age and discretion to protect himself. This fact makes it incumbent upon the motorman having charge of the car, to take greater precaution to protect such child and the plaintiff in this case than would be required in the case of an adult similarly situated. For this

reason, it is important in this case that you take into consideration the situation of the parties, of the child, its age, its position or movements on the pavement and all of the surrounding circumstances, in order to determine whether the defendant, through its motorman, performed its full duty in protecting the child and in preventing this accident.

"Now, gentlemen, in this connection, coming to the question of the defendant's duties in running its car on the day in question, you are further instructed that there is no duty or obligation on the part of the defendant company, to slack or stop its cars at every time a young child, unattended by older persons, appears on the street at some distance ahead of or near a car. Such a rule applied, would, in many localities, make it practically impossible for the company to render reasonably efficient service to the public. And in this case, if you find that the motorman had taken all the precautions that a reasonably cautious and prudent man should take under the circumstances, and if, from a place that was apparently safe to a reasonably prudent man, the child suddenly rushed upon the track when it was too late for the motorman to stop the car, then the accident was unavoidable and there could be no recovery by the plaintiff."

Other language might be quoted from the charge to the similar effect. We think that the instructions were correct and carefully stated the legal rights and obligations of the parties to this unfortunate accident. See Thompson on Negligence (1st Ed.), pp. 398, 1129; Beach on Contributory Negligence (1st Ed.), p. 395; *Barnes* v. *Railroad Co.*, 49 Am. St. Rep. 400 (47 La. Ann. 1218).

2. Error is assigned upon the failure of the court in his oral charge to instruct the jury that they must limit plaintiff to such loss of earning capacity as would ensue after he had reached his majority. No argument is required to show that an instruction to that effect would have correctly stated the law. It is stated in defendant's brief that the father has an action now pending to recover for the loss of his son's services before his majority. For some reason the question was not raised upon the trial. We assume that the amount of damages was argued to

the jury. If so, the argument must have been based upon the theory that the plaintiff was entitled to recover for loss of services during his minority. A suggestion to the court by counsel for either side would have avoided the error. There would be considerable force in holding that the question, not having been raised upon the trial, cannot now be raised. *Tunnicliffe* v. *Railway Co.*, 107 Mich. 261; *Carter* v. *Bedortha*, 124 Mich. 548; *Hewitt* v. *Lumber Co.*, 136 Mich. 110.

The damages which the plaintiff recovered during that period could not materially vary from that which the father would be entitled to recover. In either event the expense of his clothing, living, and maintenance would be deducted from the amount he would probably earn. After the point was raised by counsel for the defendant in their brief in this court, the father filed a release of all claim for such services against the defendant. This action certainly released defendant from any further liability to the father. It is as good a release to the defendant as though the father had released his claim before suit was brought, or had emancipated his son. Under these circumstances we think the defendant is not entitled to a reversal of the case for an error for which it at least is partly responsible.

Judgment affirmed.

MONTGOMERY, OSTRANDER, HOOKER, and CARPENTER, JJ., concurred.